## UNION INSURANCE COMPANY *v.* SMITH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

Submitted January 6, 1888.—Decided January 30, 1888.

A time policy of marine insurance on a steam tug to be employed on the Lakes, insured her against the perils of the Lakes, excepting perils " consequent upon and arising from or caused by " " incompetency of the master " " or want of ordinary care and skill in navigating said vessel, rottenness, inherent defects," " and all other unseaworthiness." While towing vessels in Lake Huron, in July, her shaft was broken, causing a leak at her stern. The leak was so far stopped that by moderate pumping she was kept free from water. She was taken in tow and carried by Port Huron and Detroit and into Lake Erie on a destination to Cleveland, where she belonged and her owner lived. She sprang a leak in Lake Erie, and sank, and was abandoned to the insurer. On the trial of a suit on the policy, it was claimed by the defendant that the accident made the vessel unseaworthy, and the failure to repair her at Port Huron or Detroit avoided the policy. The court charged the jury that if an ordinarily prudent master would have deemed it necessary to repair her before proceeding, and if her loss was occasioned by the omission to do so, the plaintiff was not entitled to recover; but if, from the character of the injury and the leak, a master of competent judgment might

reasonably have supposed, in the exercise of ordinary care, that she was seaworthy to be towed to Cleveland, and therefore omitted to repair her, such omission was no bar to a recovery. *Held*, that there was no error in the charge.

Expert testimony as to whether, under the circumstances, it was the exercise of good seamanship and prudence to attempt to have the vessel towed to Cleveland, was competent.

The question of the competency of the particular witnesses to testify as experts, considered.

The weight of the evidence of each witness was a question for the jury, in view of the testimony of each as to his experience.

It was not improper to refuse to allow the defendant to ask a witness what talk he had with the master of the tug, after she was taken in tow, in regard to the leak, or what should be done, it not being stated what it was proposed to prove, and it not appearing that the statement of the master ought to be regarded as part of the *res gestae*.

A motion by the defendant, at the close of the plaintiff's testimony, to take the case from the jury, was properly refused, because it was a motion for a peremptory nonsuit, against the will of the plaintiff; and it was waived by the introduction by the defendant of testimony in the further progress of the case.

A general exception to a refusal to charge a series of propositions, as a whole, is bad, if any one of the series is objectionable.

The defendant having set up, in its answer, that the loss was occasioned by want of ordinary care in managing the tug at the time she sprang a leak in Lake Erie, and having attempted to prove such defence, it was not error to charge the jury that such want of ordinary care must be shown by a fair preponderance of proof on the part of the defendant.

THIS was an action upon a policy of marine insurance. Judgment for plaintiff. Defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Harvey D. Goulder* for plaintiff in error.

*Mr. J. E. Ingersoll* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law brought by Patrick Smith against the Union Insurance Company of the City of Philadelphia, a Pennsylvania corporation, in the Court of Common Pleas of Cuyahoga County, Ohio, and removed by the defendant into the Circuit Court of the United States for the Northern Dis-

trict of Ohio, to recover the sum of $7000, with interest, for the loss of a vessel insured by a policy of marine insurance issued by the defendant. The policy was dated May 6, 1884, and insured the steam-tug N. P. Sprague, from May 6, 1884, to December 10, 1884, in the sum of $7000, the vessel "to be employed exclusively in the freighting and passenger business, and to navigate only the waters, bays, harbors, rivers, canals, and other tributaries of lakes Superior, Michigan, Huron, St. Clair, Erie, and Ontario, and river St. Lawrence to Quebec, usually navigated by vessels of her class," the vessel being valued in the policy at $9334. The policy contained these provisions: "Touching the adventures and perils which the said insurance company is content to bear and take upon itself by this policy, they are of the lakes, rivers, canals, fires, jetti- sons, that shall come to the damage of the said vessel or any part thereof, excepting all perils, losses, misfortunes, or expenses consequent upon and arising from or caused by the following or other legally excluded causes, viz.: Damage that may be done by the vessel hereby insured to any other vessel or property; incompetency of the master or insufficiency of the crew or want of ordinary care and skill in navigating said vessel, and in loading, stowing, and securing the cargo of said vessel; rottenness, inherent defects, overloading, and all other unseaworthiness." "Boiler clause. Unless caused by stranding, collision, or the vessel being on fire, the insured warrants this policy to be free from any claim for loss or damage to boilers, steam-pipes, or machinery caused by the bursting, explosion, collapsing, or breaking of the same, and to be free from any and every general average and salvage expense in consequence thereof, excepting always the expenses of getting the vessel from an exposed position to the nearest place of safety, when further expenses of above nature are not to be a claim on the insurer."

The petition by which the suit was commenced in the state court set forth that the plaintiff was the owner of the tug; that on the 18th of July, 1884, the vessel, in her regular course of business, left Port L'Anse, bound to Cleveland; that she was then stout, stanch, and strong, and in all respects

seaworthy for the voyage she was about to undertake; that, while on that voyage, and on the 23d of July, 1884, and without fault or negligence on the part of the plaintiff or those in charge and management of her, but solely by reason of the perils of navigation so insured against by the defendant, she sprung a leak; that, although the plaintiff and his agents, and the officers in charge of the vessel, used all reasonable endeavors to prevent said vessel filling with water, they were unable so to do; that, within a short time after the discovery of the leak, the vessel filled with water and sank, and became a total loss; that the plaintiff promptly caused proof of loss to be made to the defendant, as required by the policy, and also, in compliance with its terms, caused to be made to the defendant an assignment and transfer of all interest which he had in the vessel, and made a claim upon the defendant for $7000, as for a total loss; and that the defendant accepted the abandonment and transfer.

The answer admitted the character and general occupation of the tug, and the issuing of the policy to the plaintiff, and denied every allegation in the petition not expressly admitted in the answer to be true. The second and third defences contained in the answer were as follows:

" 2d defence. And, by way of further answer, and for a second defence, defendant says, that said tug, while on Lake Huron, was rendered helpless and unseaworthy and in great danger of springing a leak and sinking by the breaking of her shaft, a part of her machinery, which breaking was not caused by stranding, collision, or the vessel being on fire, and was compelled to and did abandon the vessel which she had in tow; and, while in such helpless, unseaworthy, and perilous condition, said tug was picked up and towed to Port Huron, a place of safety and a port of repair, where every facility and convenient means of repairing said tug were at hand; yet defendant avers that said tug was not there repaired, but, without the knowledge or consent of defendant, said tug, in the same helpless and unseaworthy and dangerous condition before described, was towed out of and past said port of Port Huron, and was afterwards towed in the same condition into and through and

past the port of Detroit, at which last named place every facility and all conveniences existed for repairing said tug, and which also was a place of entire safety; and, without any notice to defendant, and without its knowledge and consent, the said tug being then and at all times hereinbefore mentioned in the possession and control of plaintiff and his agents, said tug was, in such helpless and unseaworthy and dangerous condition, towed out upon Lake Erie, not in any manner navigating as a tug or by or with the aid of her own machinery and appliances, and, soon after reaching Lake Erie, without any stress of weather, the said tug sprung a leak and was sunk.

"3d defence. And, for a further and third defence, the defendant says, that, while said tug N. P. Sprague was on Lake Huron, having in tow several vessels, part of her machinery, to wit her shaft, broke, the said breaking not being caused by stranding, collision, or the vessel being on fire, whereby said tug was completely disabled, and was compelled to and did give up her said tow, and was rendered unseaworthy and helpless, and was in great and constant peril of springing a leak and sinking by the working of her propeller wheel and broken shaft attached thereto; and, in that condition, she was picked up, and, by direction of her master, towed to Port Huron, Michigan, which was a place of safety and at which every facility and convenient means for repairing said tug in all respects were at hand, but the plaintiff negligently failed and neglected to repair, or cause to be repaired, said tug, and negligently, and without the knowledge or consent of the defendant, caused her to be towed out of and away from said port of safety and repair, in the unseaworthy and dangerous condition above described; and afterwards, in the same condition, said tug was towed into and through and past the port of Detroit, a place of safety, where every means and facility for repairing said tug was at hand and convenient; yet the plaintiff, not regarding his duty in that behalf, negligently failed to repair, or cause to be repaired, the said tug, and permitted her, in the unseaworthy, helpless, disabled, and dangerous condition before described, to be towed out of Detroit River and out upon Lake Erie; that, soon after reaching the

lake, and meeting with a slight and ordinary swell, the said tug, by reason of her said broken machinery, and by reason of her said unseaworthiness and helpless and dangerous condition, sprung a serious leak and soon after was sunk."

The plaintiff demurred to the second defence, as not stating facts sufficient in law to constitute a defence to the cause of action alleged in the petition, and replied to the third defence as follows:

"This plaintiff admits, that, while the tug N. P. Sprague was on Lake Huron, having in tow several vessels, a part of her machinery, to wit her shaft, broke, whereby said tug was compelled to and did give up her said tow, and was rendered helpless, and was in this condition, by the direction of her master, towed to Port Huron, Michigan, which was a place of safety; that said master caused her to be towed away from Port Huron to and past Detroit, which was also a place of safety; and that, soon after reaching Lake Erie, on her way to Cleveland, she sprung a leak and soon after sunk, but this plaintiff denies all and singular the allegations in said third defence contained, except those hereinabove admitted."

The court sustained the demurrer to the second defence, and the issues of fact joined were tried by a jury, which returned a verdict for the plaintiff for $7569.33. A motion for a new trial was overruled, and a judgment was entered in favor of the plaintiff, for the $7569.33, and interest, and costs, on the 25th of March, 1886, the verdict having been rendered on the 24th of February, 1886. The defendant has brought a writ of error to review this judgment.

There is a bill of exceptions, filed on the 25th of March, 1886, which sets forth, that, at the trial of the case, the plaintiff, to maintain the issue on his part, introduced and offered in evidence certain testimony, which is set forth. At the close of such testimony, it is stated that counsel "moved the court to take the case from the jury on the ground of absence of proof of a loss of plaintiff's vessel within the policy, and because there is not sufficient testimony to justify a recovery;" that "the motion was overruled by the court, to which ruling the defendant duly excepted;" and that "the foregoing was

all the testimony offered by the plaintiff to maintain the issues on his part, in chief." It is then stated that the defendant, to maintain the issues on its part, offered in evidence certain testimony, which is set forth. It is then stated that "the foregoing was all the testimony offered upon either side, and upon both sides, in the trial of said case;" that, "the testimony being all in, defendant moved the court here to take the case from the jury and direct a verdict for the defendant;" that the motion was overruled by the court; and that the defendant excepted to such ruling.

The charge of the court to the jury is then set forth at length. The charge, after a statement of the pleadings, was as follows:

"These pleadings form the issue that you are required to determine, in the light of the proof that you have heard on this trial. To entitle the plaintiff to recover he must show that he has complied with the terms of the policy; that he has made the necessary preliminary proofs; that the vessel was lost by reason of the perils against which it was insured; and it must appear from the whole proof, that the loss was not occasioned by the want of ordinary care of the master in charge of the vessel, or on account of being unseaworthy, as hereinafter stated, and not within the exceptions contained in the policy, against which the defendant did not insure the plaintiff.

"The perils of the lake, river, &c., which the defendant took upon itself, by the terms of the policy, were such as should come to the damage of the vessel or any part thereof, excepting the incompetency of the master or insufficiency of the crew, or want of ordinary care and skill in the navigation of the vessel, rottenness, and defects of the vessel, and all other unseaworthiness.

"The perils of the lake described and referred to by this policy of insurance denote the natural accidents peculiar to that element, which do not happen by the intervention of man nor are to be prevented by human prudence.

"[I direct you that the breaking of the shaft, without any fault of the master or owners, was one of the perils covered

by the insurance, and, if the vessel had been lost by reason thereof, the defendant would have been liable under the policy.] So, if such breaking of the shaft in Lake Huron was the cause of the Sprague sinking afterwards in Lake Erie, without the master being guilty of a want of ordinary care in the navigation of the vessel, such loss was covered by the policy of insurance. [If the vessel was lost in Lake Erie from the sudden springing of a leak, occasioned from some unknown cause, and without the fault of the master or the owners, in the exercise of ordinary care in its navigation, and the vessel at the time it started being seaworthy, such loss would be covered by the insurance under the policy. The plaintiff, however, in such case must show that the master in control of the vessel exercised ordinary care in its management at the time that the loss occurred.]

" Ordinary care is such as a reasonably prudent man would exercise, and must have reference to the circumstances under which the care is required to be exercised. What would be ordinary care under some circumstances may not be at other times and under other circumstances.

" [It was generally the duty of the plaintiff to keep the Sprague in a seaworthy condition for the safe navigation of the waters in which she might be run under the policy, and, when that seaworthiness, under the policy of insurance, is made and attaches, it is presumed to exist and continue, and the burden of the proof of unseaworthiness would then be upon the defendant.]

" [There is no claim in the defence in this case that the Sprague was not seaworthy when she started from the port of L'Anse, with her tows, for the port of Cleveland,] but it is claimed that in Lake Huron her shaft was broken, causing a dangerous leak in the vessel, so that she was disabled and had herself to be taken in tow with the other vessels, and that she then became and was unseaworthy, and that it was the duty of the plaintiff or the master to have repaired her, so as to make her seaworthy, at either Port Huron or the first port at which it could be done, or at the port of Detroit, before attempting to cross Lake Erie to Cleveland, and which, it is

claimed, was not done, by reason of which the vessel was lost, and, therefore, the defendant not liable on this policy.

"The Sprague having been temporarily repaired by calking the leakage occasioned by the breaking of her shaft, and taken in tow by the Wilcox, and in safety having reached Detroit, the question presents itself as to the duty of the master or plaintiff to have the proper repairs made there, before starting on Lake Erie for her home port on Lake Erie, and, failing to do so, how does it affect the plaintiff's right to recover on this policy?

"[On this point, I direct you, that if, when the Sprague arrived at Detroit, the breaking of the shaft and the consequent leakage therefrom was such that an ordinarily prudent and discreet master, of competent skill and judgment, would have deemed it necessary to repair the vessel, so as to stop the leak, before proceeding on the voyage to Cleveland, and you find that the sinking of the vessel and its loss was occasioned by his omission to do so, and would not otherwise have happened, then the plaintiff is not entitled to recover in this suit.]

"[But if you find, from the character of the injury and the leak, that a master of competent skill and judgment might reasonably have supposed, in the exercise of ordinary care for the safety of the vessel, that she was seaworthy for the voyage in which she was then engaged, in the manner that she was to make the trip to Cleveland in tow of the Wilcox, notwithstanding the leakage occasioned by such breaking of the shaft, and on that account omitted to make such repair at Detroit, then such omission to make such repair at Detroit is no bar to a recovery in this suit.]

"[On the question of the competency of the master, I direct you, that the competency of the master is not to be determined by the want of a license to act as master of a vessel, or by the fact that the master had a license under the provisions of the statute, but it is to be determined by the skill, experience, and ability of the master in the line of his duties as master, as shown in the proof.]

"[The seaworthiness of a vessel must have reference to the character of the service to be performed and the nature and

character of the voyage to be made in this case. Was the Sprague seaworthy, at the time she left Detroit, to be towed from Detroit to Cleveland, not to propel herself in the navigation of the Lakes in the usual business of a tug, but seaworthy so as to be in a condition to be towed, as the voyage was undertaken to be made, in tow of the tug Wilcox?]

" In view of these general principles of law, it will be important for you to carefully examine all of the evidence in reference to the injury and its extent, and the means used temporarily to stop the leakage and keep the vessel clear of water during the period of her trip from the place of injury to Detroit, and how it appeared to the master at Detroit, and what was its condition when the vessel did arrive at Detroit.

" And, as bearing upon the exercise of every ordinary care by the master, in reference to the continuing of the voyage without repairs, you will carefully consider the opinions of the experts in navigation who have testified to you in relation to the character of the vessel and the injury, and the necessity, for the safety of the vessel, of repairing, and the danger or absence of danger in continuing the voyage, under all the circumstances of the situation. The value of this expert testimony depends very largely upon the skill, the information or knowledge, and the experience, of the party who undertakes to give his opinion on any given subject. We are always required to consider the testimony of experts in different and various branches of business, and more particularly that connected with navigation upon the lakes and rivers in this country. Then the opinions of these experts depend very largely upon the truth of the hypothetical case that counsel on the one side and on the other have seen proper to put to the witnesses during their examination, and you, no doubt, have noticed, in the testimony of these experts, that the same expert witness, in response to the hypothetical case on the one side, will answer affirmatively, and to the hypothetical case put by the other side he will answer affirmatively also.

" The value of that sort of opinion depends very largely upon the question of how the facts in this case have been established in the proof before you, and, in giving weight to the testimony

of experts, you will be careful to ascertain what the evidence establishes as to the truth of the one or the other of these different hypothetical cases put by counsel to the witnesses on the examinations.

"Then it is claimed that in Lake Erie, at the time of the sudden increase of the leakage of the vessel, the master did not exercise ordinary care for the safety of the vessel, in not taking her to a safe port, or safe place on the beach, so as to prevent the loss of the vessel. I direct you that it was the duty of the master at the time to exercise ordinary care, under all the circumstances, to secure the safety of the vessel, and to prevent the loss thereof, or any greater loss than could be prevented by the exercise of such ordinary care by the master.

"You will then carefully consider the evidence, and all the circumstances surrounding the transaction, with the evidence of the experts who have given testimony in the case, and find whether the master was guilty of the want of ordinary care. If you find he did not exercise that care and diligence, and the vessel was lost for the want of such care, then the plaintiff is not entitled to recover in this action.

"[The burden, however, to show the want of ordinary care at the time of the loss in Lake Erie, must be shown by a fair preponderance of the proof on behalf of the defendant, for the reason that the defendant sets it up in its special defence, in the form of a special answer, and in that respect takes upon itself the establishment of the affirmative of that proposition.]

"Under these general directions — and these are about all the questions of law involved in the case — you are to make your finding. [So far as the matter of preliminary proof is concerned, required to be made out by the plaintiff, I do not understand that the defendant makes any great contest in reference to whether that was made or not, but it has denied it in the form of an answer, and you will look into the testimony and see whether that satisfactorily shows the proof of loss was made to this company before this action was brought, although the paper was not present on the trial before you.] Then carefully examine all the evidence, and if you find that the plaintiff has not made out all that is necessary to entitle

him to recover, your verdict will be in favor of the defendant, but if you find, in the application of these general principles, under the evidence before you, that the plaintiff is entitled to recover in this action, the measure of that recovery is the amount of the policy of insurance, the vessel being a total loss, and having been estimated in the policy at $9300. The measure of recovery would be the $7000, and the plaintiff would be entitled to recover interest from the time the money became payable by the terms of the policy — sixty days after the presentation of the preliminary proof — until the first day of the present term.

"Now take the case, gentlemen, and make such a finding as will satisfy you of having correctly carried out these general principles and correctly weighed, considered, and decided the questions of fact before you."

The bill of exceptions then states that the defendant took the following exceptions to the charge of the court:

"1. To that portion of the charge which relates to the breaking of the shaft on Lake Huron, without any fault of the master's, being a peril of the sea, and if the loss occurred from that the defendant would be liable.

"2. To that portion of the charge which says the springing of a leak on Lake Erie from some unknown cause would be a peril of the sea for which the defendant would be liable.

"3. To that portion of the charge which says the burden of the proof of unseaworthiness is on the defendant, and also to the statement of the charge that there is no claim on the part of the defendant that she was not seaworthy when she left L'Anse.

"4. To that portion of the charge in reference to the duty of the plaintiff or master to repair at Detroit, and to that part in which the court says, that if an ordinarily prudent and skilful master would have stopped at Detroit and made repairs, then it was plaintiff's duty to so stop in this case.

"5. To that portion of the charge, in the same connection, in which the court directs the jury, that if they find, from the character of the leak, &c., in the exercise of ordinary care, the master would not stop, then the defendant would be liable.

" 6. To that portion of the charge in reference to the license of the master.

" 7. To that part of the charge which says that seaworthiness must have reference to the nature of the voyage,

" 8. To that portion of the charge which says that the burden of proof is on the defendant to show the want of ordinary care at the time of the loss, in trying to prevent the loss, because the defendant sets that up in a special plea.

" 9. To that portion of the charge in reference to the preliminary proofs having been made in this action.

" 10. Also to the refusal of the court to charge the requests presented by the defendant in this case, numbered 1 to 15.

" 11. Also to the entire charge as given."

It is then stated in the bill of exceptions, that the defendant requested the court to give to the jury the following instructions:

" 1. Under all the testimony in this case your verdict should be for the defendant.

" 2. The burden of proving a loss of this kind is on the plaintiff. There is no presumption that the loss was caused by a peril insured against by the defendant.

" 3. It was the duty of the master, at Detroit, before leaving or passing for Cleveland with a crippled tug, to ascertain at the signal station what would probably be the weather in the direction of Cleveland during the time necessary to reach that point, if such information could have been obtained at Detroit, and his failure to do so would be, under such circumstances, a want of ordinary care and skill.

" 4. It was the duty of the plaintiff to keep the tug Sprague in a seaworthy condition for the safe performance of this trip — that is, her hull must have been so tight, stanch, and strong as to be competent to resist all ordinary action of the winds and waves — and, if he failed to put her in such condition at Detroit, and she was lost in consequence of her failure to be in such condition on Lake Erie after passing Detroit, and you find that sufficient repairs could have been made at Detroit, your verdict must be for defendant.

" 5. Under the policy in this case, the company does not

agree to indemnify the plaintiff against all damages that might happen to her in the course of navigation of a vessel, or all the misfortunes that may befall her while upon the Lakes, and there are excepted from the provisions of this policy, and from the liability of the defendant, certain risks which the defendant does not take upon itself to bear. The purport of these exceptions, so far as this case is concerned, is, that the company does not undertake to insure any loss to this vessel which may be occasioned by the incompetency of the master, the insufficiency of the crew, or want of ordinary care and skill in navigating, or any unseaworthiness of any description.

" 6. In order to find for plaintiff, you must find that the loss of this tug was by a peril of the sea, that is, by some natural perils and operation of the elements which occurred without the intervention of human agency, and which the prudence of man could not foresee nor his strength resist. Imprudence or want of skill in a master may have been unforeseen, but it is not a fortuitous event. The insurer undertakes only to indemnify against extraordinary perils of the sea, and not against those ordinary ones to which every ship must inevitably be exposed.

" 7. It is admitted by the pleadings in this case, that, after the breaking of the shaft on Lake Huron, the tug was towed to Port Huron, and also to Detroit, both ports of safety. This being so, if you find that the loss was occasioned by reason of unseaworthiness after leaving Detroit, the defendant is entitled to your verdict.

" 8. Under the circumstances of this case, if you find that the vessel was not seaworthy when she sprung a leak on Lake Erie, your verdict must be for the defendant, without reference necessarily to any question of whether the master used good or bad judgment in leaving or passing Detroit, because the plaintiff and defendant agreed in the policy that perils and losses growing out of unseaworthiness were not insured against.

" 9. If you find that the loss was incurred or contributed to by the incompetency of the master, or want of ordinary care and skill in navigation, your verdict must be for defendant.

" 10. If you find that, after the danger was discovered on

Lake Erie, the master did not do what a competent master of ordinary prudence would do, and that, by the use of ordinary skill and care, under such circumstances, by a competent master, the tug could have been got to a place of safety and her loss prevented, your verdict should be for the defendant.

"11. The fact that this tug began leaking so rapidly on Lake Erie, in moderate weather, so soon after leaving Detroit, raises a presumption that, either from the effects of the accident on Lake Huron, or in some other respect, she was unseaworthy for the undertaking to go to Cleveland when she left Detroit, which it devolves upon the plaintiff to explain and overcome.

"12. The burden of proof is on the plaintiff in this case, to show, by a fair preponderance of the testimony, that the sinking and loss of this tug could not have been guarded against or prevented by the ordinary exertion of human skill and prudence.

"13. In this case the words 'ordinary skill' and 'ordinary care' have a relative meaning. What would be ordinary care in relation to a strong, stanch, sound vessel, might fall far short of ordinary care and skill in relation to a wounded vessel. What might be ordinary care and skill if the tug was seaworthy and navigating as a tug, might fall far short of ordinary care when the tug is broken down and a severe and dangerous leak has been temporarily stopped. You must consider the circumstances of the case, the condition of the vessel, whether she could meet and withstand the ordinary wear and tear and strain of the elements, or required fine weather and smooth water; what means there existed of ascertaining the probable weather during the time he would be occupied in crossing Lake Erie; what precaution he took or failed to take in this respect; as well as all other circumstances.

"14. If this tug, after her accident on Lake Huron, was unseaworthy, and in consequence was lost on Lake Erie, her loss is to be attributed to the unseaworthiness and not to the accident, provided the master had opportunity to repair the damage done on Lake Huron, and in that case your verdict must be for the defendant.

"Which requests to charge were refused by the court, except so far as covered by the charge already given, to which refusal to charge the defendant excepted.

"And the jury, after being charged, retired, and afterwards returned a verdict for said plaintiff against said defendant for the sum of seven thousand dollars; and, the defendant having filed its motion for new trial for the reasons and causes set out in said motion, and the said Circuit Court having overruled said motion and entered judgment on said verdict, the said defendant excepted to the said ruling of said court overruling said motion for new trial, and to said judgment, and prayed the court here to sign and seal this its bill of exceptions, and order the same to be made a part of the record in this case; all which is done and ordered as said defendant has prayed for." Then follow the signature and seal of the judge.

The defendant alleges that the Circuit Court erred in overruling objections taken by it to testimony offered by the plaintiff; and in rejecting testimony offered by the defendant; and in overruling the motion made by the defendant to take the case from the jury at the close of the plaintiff's testimony; and in overruling the motion made by the defendant, at the close of its testimony, to take the case from the jury and to direct a verdict for the defendant; and in overruling objections taken by the defendant to the charge to the jury; and in overruling the defendant's requests to instruct the jury.

Assuming that the bill of exceptions sufficiently indicates that the exceptions taken by the defendant to the admissions and exclusions of evidence were taken during the course of the trial, we proceed to consider the objections urged to the admissions of evidence.

John Bowen, the master of the tug, who was on board of her at the time she was lost, was asked this question:

"Q. What do you say as to its being good seamanship and prudent to bring her through to Cleveland at that time?

"(Objected to, objection overruled, and defendant excepted.)

"A. I think it was on my part."

George Ellis, who was a fireman on the tug at the time, was asked the following question:

"Q. What is the fact about whether vessels do sometimes begin to leak in a calm, when you cannot explain how the leak comes?

"(Objected to, objection overruled, and defendant excepted.)

"A. I could not explain that; I have not known of other cases of the kind where you did not know the cause of the leak."

And again:

"Q. State whether it would have been good seamanship and prudent to try to tow the Sprague across the Lake to Cleveland at the time you got ready to leave her.

"(Objected to, objection overruled, and defendant excepted.)

"A. Well, sir, if I was to get Lake Erie for it, I would not take it across—yes; I mean it was not prudent."

Walter S. Rose, the mate of the tug, who was on board of her, was asked this question:

"Q. So that, when you got to Detroit, state what need or occasion there was for your stopping there because of any leakage that you were not able to control; whether there was anything of that kind.

"(Objected to, objection overruled, and defendant excepted.)

"A. There was nothing any more than there was all the time down—just the same."

And again:

"Q. What do you say as to its being a matter of prudence for you to come past Port Huron, or to come past Detroit, and to try and get the tug to the home port, in order to have her repaired there? The question is, whether the captain exercised reasonable prudence in bringing her by?

"(Objected to, objection overruled, and defendant excepted.)

"A. I think he did."

The plaintiff himself, as a witness, was asked whether, on the facts of the case, detailed to him in the question, it was the exercise of good seamanship and prudence, when the vessel reached Port Huron, to continue right on, to bring her to her home port of Cleveland. He answered that he would consider it good seamanship.

He was also asked:

"Q. If you could stop the leak state whether any such boat would be seaworthy.

"A. I would not consider her unseaworthy to tow to Detroit or any other port."

He was also asked, on the facts, as to its being prudent to keep on from Detroit and bring the tug to her home port. He answered that he thought it would be prudent and good seamanship.

The entry in respect to each of these three questions is "(Objected to, objection overruled, and defendant excepted.)"

Similar objections were made to the testimony of Edward Kelly, an expert witness.

In regard to Bowen, the objection is made that he was not qualified as an expert. But he was the master of this vessel and on board of her at the time; had been her master from the time she went out in the spring until she was lost; had made two or three trips in her the fall before; had run another tug from Cleveland for a few weeks in 1884, before taking the Sprague; and had been engaged in the navigation of the Lakes and adjacent waters about twenty or twenty-one years, off and on. The witness Ellis had followed the Lakes for twenty-seven years, and had been connected with tugs about four years, and was a fireman on this tug. The witness Rose had followed the Lakes for thirty-six years, and was mate of the tug, and had been second mate of a steam barge for one season. The plaintiff had been in the tug business for twenty or twenty-five years, and had run a tug all around Lake Erie. The witness Kelly had been a part of two seasons in a tug; had sailed sailing vessels, steamers, and steam barges; and had sailed a few trips in this tug.

In regard to the objection that these witnesses were not qualified as experts, in addition to the fact that three of them were on board of the tug at the time, and in its service, the court charged the jury, that the value of expert testimony depended very largely upon the skill, the information or knowledge, and the experience of the witness; and that, in giving weight to the expert testimony, the jury should be careful to ascertain what the evidence established as to the truth

of the hypothetical questions put to the witnesses by the counsel on the one side and on the other.

We think that the witnesses in question were competent to give their testimony to the jury, in response to the questions asked of them, and that the question as to the weight of the evidence of each of them was one for the jury, in view of the testimony of each as to his experience. *Transportation Line* v. *Hope*, 95 U. S. 297, 298; *McGowan* v. *American Tan-Bark Co.*, 121 U. S. 575, 609.

It is also objected, that the testimony given by the five witnesses above mentioned was not the proper subject of expert testimony; that, under the policy in this case, the proper inquiry was not as to the prudence of the captain in passing Port Huron; and that, if the vessel was, as a matter of fact, unseaworthy, either because of her rottenness or her unnavigability, or the broken and leaky condition of her stern, and if the loss was occasioned by unseaworthiness, the defendant was not liable. But we think that the testimony referred to was competent, in view of the questions the jury were to consider, as properly laid before them by the court in its charge, to be considered hereafter.

We see no objection to the introduction of the secondary evidence as to the proofs of loss, on the failure of the defendant to produce them on notice. This applies to the evidence of the witness W. B. Scott and of the plaintiff on that subject. As to the other objections to the testimony of the witness Scott, and to that of the plaintiff, and the objections to the exclusion of a question asked of the defendant's witness Newton, and to the admission of testimony given by the witness McNillie, and to the admission of some testimony given by Captain Bowen on rebuttal, and of testimony given on the part of the plaintiff as to the value of the tug, it is sufficient to say, that we see no objection to the rulings of the court, as the testimony admitted was either competent, or, if not strictly competent, was harmless, and that excluded was incompetent.

One of the objections to the exclusion of evidence was that the defendant was not allowed to ask its witness, the chief engineer of the tug at the time of the occurrence, what, if

any, talk he had with the captain of the tug after the Wilcox took her in tow, in regard to the leak or what should be done. It is not stated what it was proposed to prove, and it is not shown that the statement of the captain at the time mentioned ought to be regarded as a part of the *res gestæ*. *Vicksburg & Meridian Railroad* v. *O'Brien*, 119 U. S. 103. The evidence was not competent.

As to the overruling of the motion of the defendant to take the case from the jury at the close of the plaintiff's testimony, it was a motion for a peremptory nonsuit against the will of the plaintiff; and it was waived by the introduction by the defendant of testimony in the further progress of the case. *De Wolf* v. *Rabaud*, 1 Pet. 476; *Crane* v. *Morris*, 6 Pet. 598; *Silsby* v. *Foote*, 14 How. 218; *Castle* v. *Ballard*, 23 How. 172, 183; *Schuchardt* v. *Allens*, 1 Wall. 359, 369; *Grand Trunk Railway* v. *Cummings*, 106 U. S. 700; *Accident Ins. Co.* v. *Crandal*, 120 U. S. 527, 530.

As to the motion of the defendant, at the close of the testimony on both sides, to take the case from the jury and direct a verdict for the defendant, we are of opinion that the case was, on the evidence, one for the jury.

As to the exceptions to the charge of the court, they may, perhaps, fairly be said to point sufficiently to the portions of the charge which are hereinbefore set forth in brackets.

As to the fourteen requests to charge which were refused by the court, except so far as they were covered by the charge which it had already given, the statement in the bill of exceptions is, that the defendant excepted to the " refusal to charge," that is, to the refusal to charge the requests as a whole. The exception is a general one, to the refusal to charge the entire series of the fourteen propositions; and it is well settled that such a general exception is bad, provided any one of the series is objectionable. *Beaver* v. *Taylor*, 93 U. S. 46; *Worthington* v. *Mason*, 101 U. S. 149; *United States* v. *Hough*, 103 U. S. 71. The first one of this series of propositions was clearly objectionable, namely, that, under all the testimony in the case, the verdict of the jury should be for the defendant.

As to the parts of the charge which may be considered as

having been excepted to, namely, the parts included in brackets, the argument on behalf of the defendant is, that, after the tug's shaft had been broken, so that she was unable to navigate herself as a tug, she became unseaworthy for all purposes; and that, if the plaintiff took the tug, while she was in that condition, past a port where he might have had her repaired, such conduct would prevent a recovery upon the policy if she were lost while she continued in such unseaworthy condition, even though the loss did not arise from the breaking of the shaft.

But the Circuit Court took the view, in its charge, and, as we think, correctly, that, while the breaking of the shaft might have rendered the tug unseaworthy for the purpose of propelling herself and towing other vessels, yet it was competent for the plaintiff to prove, as he claimed to the jury the fact was, that the master stopped the leakage occurring around the broken shaft at the stern of the vessel, so far as would make her seaworthy to be towed, and undertook to have her towed to the port of Cleveland, which was her destination, where he could have her repaired by her owner. The court instructed the jury, in substance, that permitting the tug to be towed in such condition, past Port Huron and Detroit, and through the Detroit River, into Lake Erie, with the design to take her to Cleveland for repairs, would not of itself constitute such a breach of the policy as would deprive the plaintiff of his right to recover thereon; and that, if the master of the tug, in the exercise of reasonable prudence and discretion, took that course, after he had so far controlled the coming in of water at the place where the break of the shaft had occurred, as to render the vessel reasonably safe to undergo, at that time of the year, the navigation proposed in the form proposed, it would be proper for the jury to consider, on all the evidence, whether such condition of the vessel was the cause of her ultimate loss, and, if so, whether, in taking her past a port where she might have been repaired, the master was guilty of incompetency, or of such lack of ordinary care in navigating the vessel, as brought the case within the exceptions contained in the policy, as above set forth.

The contention of the defendant is, that, if the vessel became unseaworthy from any cause in the course of her voyage, and failed to put in at the first port where such unseaworthiness could be repaired, that unseaworthiness operated to release the insurer from liability, whether the loss resulted from such unseaworthiness or not.  But we are of opinion, that, by the terms of the policy, the vessel was insured against all perils of the lakes which should damage her, excepting perils and losses consequent upon and arising from, or caused by, the specified and excluded causes applicable to and arising out of the facts of this case, namely, incompetency of the master, or want of ordinary care and skill in navigating the vessel, rottenness, inherent defects, and all other unseaworthiness.

The company is not released from liability by reason of the existence of any of the excluded conditions, but is released from such losses as are consequent upon and arise from or are caused by any of the specified, excluded causes.  If, therefore, the vessel was subjected to a peril of the lake, and sustained loss which did not arise from, or was not caused by, some one of the excluded causes, the company was not released from liability.  Therefore, it was contended by the plaintiff, that, although the shaft of the tug had been broken, in Lake Huron, about seventy miles from Port Huron, yet, as the master had succeeded at the time in so stopping the leak around the shaft that he had it under such control that he was able to have the tug taken in tow, and, by moderate pumping, to keep her free from water, and as, after reaching Port Huron, and finding that the leak was under control, he continued his course to Detroit, and as he there found that the leak was still under control and proceeded to go across Lake Erie, with a design to reach Cleveland, where the vessel could be repaired by her owner, he acted with ordinary care.  This question was submitted to the jury, under all the circumstances of the case, and upon the opinions of experts, approving the course.

The question also arose, whether, when the vessel began to fill with water upon Lake Erie, such filling with water was caused by the breaking of the shaft or by some other peril; and upon this point the testimony of the master, who made a

particular examination at that time, was distinct, that the leak which had existed at the time the shaft was broken, and had been stopped by him, remained stopped at the time the water was found to be coming in. There was other testimony bearing upon the questions above stated, and which was fairly submitted to the jury, and upon which the verdict they gave was justified.

The principle adopted by the Circuit Court in laying the case before the jury was the proper one. In the insurance of a vessel by a time policy, the warranty of seaworthiness is complied with if the vessel be seaworthy at the commencement of the risk, and the fact that she subsequently sustains damage, and is not properly refitted at an intermediate port, does not discharge the insurer from subsequent risk or loss, provided such loss be not the consequence of the omission. A defect of seaworthiness, arising after the commencement of the risk, and permitted to continue from bad faith or want of ordinary prudence or diligence on the part of the insured or his agents, discharges the insurer from liability for any loss which is the consequence of such bad faith, or want of prudence or diligence; but does not affect the contract of insurance as to any other risk or loss covered by the policy and not caused or increased by such particular defect. *American Ins. Co.* v. *Ogden,* 20 Wendell, 287; *Peters* v. *Phœnix Ins. Co.,* 3 Serg. & Rawle, 25; *Paddock* v. *Franklin Ins. Co.,* 11 Pick. 227; *Starbuck* v. *New England Marine Ins. Co.,* 19 Pick. 198; *Adderly* v. *American Mutual Ins. Co.,* Taney's Dec. 126; *Copeland* v. *New England Marine Ins. Co.,* 2 Met. 432; *Capen* v. *Washington Ins. Co.,* 12 Cush. 517; *Merchants' Mutual Ins. Co.* v. *Sweet,* 6 Wisconsin, 670; *Hoxie* v. *Pacific Mutual Ins. Co.,* 7 Allen, 211; *Rouse* v. *Insurance Co.,* 3 Wall. Jr. C. C. 367.

In view of all the facts in evidence, the court properly put the case on this subject to the jury in these words:

"The Sprague having been temporarily repaired by calking the leakage occasioned by the breaking of her shaft, and taken in tow by the Wilcox, and in safety having reached Detroit, the question presents itself as to the duty of the master or

plaintiff to have the proper repairs made there before starting on Lake Erie for her home port on Lake Erie, and, failing to do so, how does it affect the plaintiff's right to recover on this policy? On this point I direct you, that if, when the Sprague arrived at Detroit, the breaking of the shaft and the consequent leakage therefrom was such that an ordinarily prudent and discreet master, of competent skill and judgment, would have deemed it necessary to repair the vessel, so as to stop the leak, before proceeding on the voyage to Cleveland, and you find that the sinking of the vessel and its loss was occasioned by his omission to do so, and would not otherwise have happened, then the plaintiff is not entitled to recover in this suit. But if you find, from the character of the injury and the leak, that a master of competent skill and judgment might reasonably have supposed, in the exercise of ordinary care for the safety of the vessel, that she was seaworthy for the voyage in which she was then engaged, in the manner that she was to make the trip to Cleveland in tow of the Wilcox, notwithstanding the leakage occasioned by such breaking of the shaft, and on that account omitted to make such repair at Detroit, then such omission to make such repair at Detroit is no bar to a recovery in this suit."

Special objection is made by the defendant to that portion of the charge which says, that "the want of ordinary care at the time of the loss in Lake Erie must be shown by a fair preponderance of the proof on behalf of the defendant, for the reason that the defendant sets it up in its special defence, in the form of a special answer, and in that respect takes upon itself the establishment of the affirmative of that proposition." The court had previously stated to the jury, that, to entitle the plaintiff to recover, he must show that he had complied with the terms of the policy, and that "it must appear from the whole proof, that the loss was not occasioned by the want of ordinary care of the master in charge of the vessel, or on account of being unseaworthy, as hereinafter stated, and not within the exceptions contained in the policy, against which the defendant did not insure the plaintiff." The defendant had undertaken, by expert testimony, to prove that the master

did not exercise ordinary care, when he discovered the water gaining on his pumps in Lake Erie, because he did not require the tug which was towing him to take him back to the Detroit River, and it was in regard to this claim of the defendant that the court said what is thus specially objected to. We think the instruction was proper in reference to the subject to which it related.

We do not consider it necessary to discuss particularly any of the other positions taken by the defendant. They have all of them been considered, we see no error in the record, and

*The judgment of the Circuit Court is affirmed.*