NEW YORK & P. R. S. S. CO. v. ÆTNA INS. CO.

(District Court, S. D. New York. November 21, 1911.)

1. INSURANCE (§ 146*)—CONSTRUCTION OF CONTRACT—STRICT CONSTRUCTION AGAINST INSURER.

No word in an insurance policy, prepared for the insurer by persons exercising the highest care and skill, should be disregarded, and no ambiguity should be resolved in favor of the company.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292–298; Dec. Dig. § 146.*]

2. INSURANCE (§ 150*)—CONSTRUCTION OF CONTRACT—EFFECT OF RIDER.

Where a printed rider attached to a marine insurance policy, immediately below the general statement of the name of the vessel, amount of the risk, and length of term, contained the provision, "The terms and conditions of this form are to be regarded as substituted for those of the policy to which it is attached, the latter being hereby waived," the effect was to substitute all the terms and conditions of the rider for all the terms and conditions of the policy, and make the rider the complete instrument, except for the formal provisions and particulars of the risk; and under such construction a limitation of the time for bringing suit, contained in the original policy, but not in the rider, is not a part of the contract.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 150.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. INSURANCE (§ 416*)—ACTION ON POLICY—DEFENSES—MARINE INSURANCE.

Under a marine policy on a vessel, providing, "This insurance also to cover * * * loss of and/or damage to hull or machinery through the negligence of the master, * * * or through any latent defect in the machinery or hull, provided such loss or damage has not resulted from want of due diligence by the owners * * * or by the manager, "it is not a defense to liability for a loss due to the breaking of the propeller blades during a voyage that it was negligence to leave port on the return voyage with two of the blades then broken; it not being shown that such negligence was that of the owners or manager.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 416.*]

In Admiralty. Suit by the New York & Porto Rico Steamship Company against the Ætna Insurance Company. Decree for libelant.

This is a libel in personam by the owners of the steamship Santurce against underwriters to recover a proportion of a sum of money assessed against the steamship in general average upon a salvage of the steamship and her cargo. The Santurce left New York on a voyage around the island of Porto Rico and back, December 11, 1904. On December 16, 1904, for some reason not ascertained, she broke off two flukes five feet long, of her four-bladed propeller about half the distance between the rim of the boss and the end of the blade. She arrived at San Juan on the 17th, where she discharged a part of her top cargo, and arrived the next day at Jobos, in the island. From there she went to Ponce and Mayaguez, where, on the 21st, she learned of the damage to her propeller blades which has been mentioned. From there she proceeded to Guanica, where she arrived on the 23d, and where she was "tipped" for the purpose of taking off her old propeller and shipping another which she carried. This was not done, but on the 24th she went back to Jobos in order to load a sufficient quantity of cargo to put her well down by the stern. From there she went to San Juan, having shipped 2,400 bags of sugar, and left San Juan on the 21st for New York. For some reason not certainly ascertained she stripped off the two remaining blades of her propeller at a point about 14 inches from the rim of the boss. Being thus in this helpless condition, she called to her assistance the steamship Rosewood and was towed to Nassau, where she shipped her new propeller and proceeded to New York without further mishap. Subsequently the Rosewood libeled the Santurce for salvage and recovered. The recovery was adjusted by general average, and the amount awarded against the steamship, which she had paid, was apportioned among the various underwriters. The sum being awarded against the respondent is the proper proportion of the total amount adjusted in general average. Several surveys took place, one at Jobos, one at Guanica, at which it was recommended that she proceed to Jobos and there load with 6,000 bags of sugar to put her in trim and prevent her propeller racing in the heavy sea, and that from there she might safely proceed at slow speed to New York.

The policy in question was a common form of American time policy, containing a warranty of seaworthiness and a two-year limitation. To it was attached a printed rider, pasted on the face of the policy, immediately below the first general statement of the name of the steamship, the amount of the risk, and the period for which it ran. It contained all the provisions of the usual English marine policy and at the bottom were the words: "The terms and conditions of this form are to be regarded as substituted for those of the policy to which it is attached, the latter being hereby waived." This was dated and signed by the agent, but had not at the bottom the usual fac simile printed signatures of the president and secretary of the company, which were contained only in the policy. It was conceded that the libel was filed more than two years after the final adjustment in general average, which was the last step taken by the vessel to ascertain the loss.

The underwriter relies on two defenses: First, that the proceeding was begun too late; and, secondly, that the ship was unseaworthy, and that it was negligent for the master to proceed from San Juan upon the voyage.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Everett Masten, for libelant.

John F. Foley, for respondent.

HAND, District Judge (after stating the facts as above). [1, 2] The first question is to determine what are the provisions of the policy. The respondent asserts that the policy is in force, in so far as its provisions do not conflict with the provisions of the rider, and that therefore the limitation and warranty contained in the policy is effective. To this I do not agree. If so, the words at the end of the policy have no legal effect, for it is well-recognized law in all kinds of insurance policies that a rider of itself supersedes the policy itself. Furthermore, the policy was prepared by the underwriter and under the canon contra preferentem any ambiguity makes against the respondent. Both these canons apply with particular force to an insurance policy. The instrument is prepared with the utmost care by persons thoroughly acquainted with the law and under the most skillful advice. No word in such an instrument should be disregarded; no ambiguity should be resolved in favor of the company. I think the obvious intention of the rider was to substitute all the conditions, exceptions, and provisos of the rider for those of the policy, making it the complete instrument, except for the formal provisions and the particulars of the given risk. The interpretation of the respondent, moreover, involves a grammatical change in the meaning of the words, for it would be equivalent to the following:

"The terms and conditions of this form should be regarded as substituted for those of the policy in so far as inconsistent."

There are two possible grammatical meanings—that the terms and conditions are substituted for corresponding terms and conditions; the other, that all the terms and conditions of the rider are substituted for all the terms and conditions of the policy. I think the meaning is the latter one, and that the terms and conditions as a whole are substituted, including all those parts of the policy which can properly be regarded as terms and conditions at all. That phrase, it seems to me, should reasonably include all the general stipulations of the policy, which the rider supplies, being itself a well-known form of instrument, complete in itself. I therefore conclude that the limitation in this particular is not a part of the contract of the parties.

[3] The next question is of seaworthiness. There is no warranty against unseaworthiness, but the respondent insists that it is always implied. If so, it is fulfilled or broken at the outset of the voyage. Union Insurance Company v. Smith, 124 U. S. 405, 427, 8 Sup. Ct. 534, 31 L. Ed. 497. In this case the vessel was conceded to be seaworthy when she left New York. The respondent relies upon the fact that it was negligence on the part of the master to leave with two blades broken, and most of the testimony in the case was taken upon that question. I do not find it necessary to decide this, and I shall assume it to be true, without making any finding on the facts. In the Union Insurance Company v. Smith, supra, it was said that when the defect develops during the voyage, and the master continues without proper prudence, the underwriter is protected in case the loss occurs by rea-

son of the defect. That was not necessary to the decision of the case, because the plaintiff recovered in any event, and the point actually decided was only this: That the defect must be the cause of the loss. In that respect the court differentiated the rule from breach of warranty of seaworthiness, where such proof is unnecessary. Moreover, the case is not in point anyway, because there the policy contained an express exception for negligent navigation, where here it does not.

In the case at bar, assuming the rule to be as stated by the Supreme Court, and disregarding the absence of the exception, there is no adequate evidence that the sound blades broke because of the prior break of the other two. It is true that this might have been the cause of the injury, but further than that the proof does not go. It is clearly possible that the Santurce might have struck some floating obstacle, and that this was what caused the loss. This would be more likely, if, as a matter of fact, the two stubs which first broke were found broken a second time. The evidence does not satisfy me that the two sound blades necessarily broke because the vessel was being navigated with only two.

There is, however, aside from this, a second and conclusive reason, which arises from the words of the rider, as follows:

"This insurance also to cover subject to the special terms of this policy, loss of and/or damage to hull or machinery through the *negligence* of master, mariners, engineers, or pilots, or through explosions, bursting of boilers, breakage of shafts, or through any *latent defect* in the machinery or hull, provided such loss or damage has not resulted from want of due diligence by the owners of the vessel, or any of them, or by the manager."

Now the loss in this case, on the respondent's theory, was due to the negligence of the master in putting out from San Juan in bad condition. Assuming, without deciding, that in this case the exception expressed in Union Insurance Company v. Smith might otherwise be implied, here the express words just quoted provide the contrary. Only want of due diligence by the owner or manager will supply the place of the master's negligence, and there is no evidence of that. The respondent seeks to supply the place of such negligence by asserting that San Juan was one terminus of the libelant's line. There is nothing that shows that there was any manager there, or that he had anything to do with directing the Santurce to proceed as she was. On the contrary, the master's protest, which was put in evidence by the respondent, states that on the 27th, at Jobos, she received orders to put on her spare propeller, and the master disregarded these orders, because the weather was unsettled. Whether these orders came from San Juan or not does not appear. Nor does it appear who represented the libelant at San Juan, or whether he was manager as stated in the rider.

Both defenses therefore fail, and the usual libel should go against the respondent.