## OLYMPIA CANNING CO. v. UNION MARINE INS. CO., Limited.

(Circuit Court of Appeals, Ninth Circuit. January 4, 1926.)

No. 4679.

**Insurance ⬉=⇒403—Overturning of vessel held "peril of the sea," within policy.**

Overturning of vessel under impulse of tidal and river currents *held* "peril of the sea," within policy providing for adjustment in accordance with laws and customs of England, in view of English Maritime Insurance Act 1906, rule 7, and section 55, though accident would not have occurred, but for negligent loading.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Perils of the Sea.]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by the Olympia Canning Company against the Union Marine Insurance Company, Limited. Judgment for defendant (5 F.[2d] 522), and plaintiff brings error. Reversed and remanded for new trial.

The plaintiff in error was the plaintiff below in an action on a contract of marine insurance to recover for the loss of goods on board the steamship Rubaiyat on a voyage from Olympia, via Tacoma, to Seattle. The policy provided: "And touching the adventures and perils which the said company is contented to bear and does take upon itself in the voyage so insured as aforesaid, they are of the seas, men of war, fire, enemies, * * * jettisons, * * * barratry of the master and mariners and all other perils, losses and misfortunes that have or shall come to the hurt, detriment, or damage of the aforesaid subject-matter of this insurance or any part thereof." The complaint alleged that the steamer, on leaving the port of Olympia, was in every respect seaworthy for the contemplated voyage, properly manned and equipped, and that during the course of the voyage, without any fault or negligence on the plaintiff's part, the vessel foundered and the goods became a total loss, and that said loss was by reason of the perils specified in the policy. The defendant in its answer alleged as an affirmative defense that the steamer, after sailing from Olympia with the plaintiff's goods on board, called at the port of Tacoma and there took on additional cargo, and that said additional cargo was so improperly stowed as to make the vessel topheavy, unstable, tender, and unfitted to continue the voyage, and that shortly after leaving Tacoma she capsized and sank; that the weather was fair and the sea calm, and that the capsizing and sinking of the vessel and loss of cargo was caused solely by her topheavy, unstable, tender, and unfit condition, and was not caused by perils of the sea or any other perils or risks covered by the contract of insurance.

On these issues the case was tried to the court. The court found in substance that at the time when the vessel sailed from Olympia she was in every respect seaworthy for the contemplated voyage; that she then had on board about 60 tons of cargo; that at Tacoma she took aboard 62 additional tons, consisting of gypsum and plaster in sacks; that on sailing from Tacoma she had 21 tons in the lower hold, 90½ tons on the main deck, and 10½ tons on the upper deck forward of the elevator, and was so heavily loaded that she had at her ports only about 6 inches freeboard, which was the maximum she could be put down with safety, and she was deeper down on this voyage than on any previous voyage, and that there was ample room below to have stowed all the cargo that was carried on the upper deck; that on backing out of her dock in the waterway at Tacoma she encountered the displacement waves of the steamer Indianapolis, then coming to her mooring, and that such displacement waves did not cause any undue rolling, or indicate crankiness or tenderness of the Rubaiyat; that said vessel proceeded a distance of about 2½ miles to a point in Commencement Bay, where certain well-known tidal currents exist, and a current caused by the waters of the Puyallup river emptying into said bay; that at that point her master brought her wheel over one-half a point to change her course, whereupon the vessel suddenly took a list to port, then gradually went over to starboard, and capsized and sank; that at that time the surface of the water was calm, the weather was fair and clear, and the listing and capsizing were caused by the vessel being in such topheavy, unstable, tender, and unfit condition, owing to the improper manner in which the cargo taken on at Tacoma was stowed, and was not caused by perils of the sea, or any other perils or risks covered by the insurance contract. A judgment was entered for the defendant.

W. H. Bogle, Lawrence Bogle, and Frank E. Holman, all of Seattle, Wash., for plaintiff in error.

S. Hasket Derby and Carroll Single, both of San Francisco, Cal., and Bruce C. Shorts, of Seattle, Wash., for defendant in error.

Before GILBERT, HUNT, and McCAMANT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). We accept the finding of the trial court upon the evidence in the case as conclusively establishing that the sinking of the vessel was caused by her being in so topheavy, unstable, tender, and unfit condition, due to the improper manner in which the cargo taken on at Tacoma was stowed, as to be unable to withstand the effect of certain well-known tidal currents, together with a current caused by the waters of the Puyallup river emptying into the bay. The question presented is whether or not the loss was caused by "perils of the seas," within the terms of the insurance contract.

The policy provided that adjustment and settlement should be made in conformity with the laws and customs of England, and it is admitted that said provision is controlling here. Rule 7 of the first schedule of the English Marine Insurance Act of 1906 provides: "The term 'perils of the seas' refers only to fortuitous accidents or casualties of the seas. It does not include the ordinary action of winds and waves." Section 55 of the act provides that the insurer "is liable for any loss proximately caused by a peril insured against, even though the loss would not have happened but for the misconduct or negligence of the master or crew." The act also provides: "In a time policy there is no implied warranty that the ship shall be seaworthy at any stage of the adventure." It is admitted in the pleadings that the vessel was seaworthy at the beginning of her voyage from Olympia.

The plaintiff in error contends that if a vessel is seaworthy when the policy attaches, and thereafter some unexpected and unforeseen event occurs during the course of the voyage, which changes her condition, which event, in connection with the action of the sea, even if the latter is calm, causes the vessel to founder, the loss occurs from sea perils, and that in the present case the negligent overloading of the vessel was the occurrence of such an unforeseen event. In The Xantho, 12 App. Cas. 507, a collision case, Lord Herschell said: "I am unable to concur in the view that a disaster which happens from the fault of somebody can never be an accident or peril of the sea, and I think it would give rise to distinctions resting on no sound basis if it were to be held that the exception of perils of the seas in a bill of lading was always excluded, when the inroad of the sea which occasioned the loss was induced by some intervention of human agency." In Arnould on Marine Insurance, § 822, it is said that, in order to enable the plaintiff to recover, "the proximate cause of loss must appear to have been a peril of the sea," and in section 784 it is said: "The maxim as to causa proxima as applied in practice has a twofold operation—partly to limit and partly to enlarge the underwriter's responsibility. It acts in the latter mode in all those cases where it has been decided that the underwriter shall be liable for all losses that are proximately caused by the perils insured against, though they may be remotely occasioned by the acts of negligence of the assured or his agents."

In Redman v. Wilson, 14 M. & W. 477, where cargo on a ship insured against the perils of the sea was negligently loaded by natives on the coast of Africa, and the ship in consequence shortly afterwards became leaky and, being pronounced unseaworthy, was run ashore in order to prevent her from sinking and save the cargo, it was held that the insurers were liable for a constructive total loss; the immediate cause of the loss being perils of the sea, although the cause of the unseaworthiness was the negligence in the loading. Said Parke, B.: "But it appears to us that the rule 'causa proxima non remota spectatur' applies to this case, and that the immediate cause of the loss was a peril of the sea; for the stranding was a loss by a peril of the sea. * * * In Walker v. Maitland, 5 B. & Ald. 171 (recognized and acted on in Bishop v. Pentland, 7 B. & Cr. 219, 1 Man. & Ry. 49), it was decided that the underwriters on a policy of insurance are liable for a loss arising immediately from a peril insured against, but remotely from the negligence of the master and mariners." In Bishop v. Pentland, so referred to, a ship was compelled to put into a tide harbor and was moored alongside a quay. It became necessary to fasten her by tackle to posts on the shore to prevent her falling over upon the tide leaving her. The rope by which she was so fastened, not being of sufficient strength, broke, and the vessel fell over upon her side. It was held that this was a stranding within the meaning of that word in the policy, and that the underwriters were liable, although the stranding might have been occasioned remotely by the negligence of the crew in not providing a rope of sufficient strength.

In West India Tel. Co. v. Home Insurance Co., 6 Q. B. Div. 51, a steamer insured

under a marine policy of the ordinary form was wrecked by the explosion of a boiler, in ordinary weather and under ordinary pressure of steam. The boiler had become corroded, and the corrosion might have been discovered and in some measure prevented by ordinary care. It was held that, although unseaworthiness was a cause sine qua non of the loss, the explosion was the proximate cause and was a peril insured against. In Dixon v. Sadler, 5 M. & W. 405, to an action on a time policy against loss by perils of the sea the defense was pleaded that, although the vessel was lost by perils of the sea, the loss was wholly occasioned by wrongful and negligent and improper conduct of the master and mariners of the ship in throwing overboard so much of the ballast that the vessel became unseaworthy. It was held that the underwriters were liable upon the policy. Said Parke, B.: "The great principle established by the more recent decisions is that, if the vessel, crew, and equipments be originally sufficient, the assured has done all that he contracted to do, and is not responsible for the subsequent deficiency occasioned by any neglect or misconduct of the master or crew." Upon writ of error, Sadler v. Dixon, 9 M. & W. 895, the judgment was affirmed.

In Davidson v. Burnand, L. R. 4 C. P. 117, the policy included perils of the sea. While the vessel was loading in the harbor her draft was increased by the weight of cargo until the discharge pipe was brought below the surface of the water. The cock of that pipe has been negligently left open. Water flowed into the hold causing injury to cargo. Willes, J., could find no distinction between loss from an accident happening through the negligence of the crew of another vessel and loss from accident happening from the negligence of the crew of the vessel on which the loss was occasioned, all such distinction having been swept aside by Dixon v. Sadler, 5 M. & W. 405. Keating, J., was of the same opinion, as was also Brett, J., who, speaking of the manner in which the injury occurred said: "The water got in, not by the happening of any ordinary occurrence in the ordinary course of the voyage, but by the accidental circumstance of some cock having been left open by the negligence of the crew. This is, in my opinion, sufficient to make the underwriter liable. Cases of like purport are Devaux v. J'Anson, 5 Bing. (N. C.) 515, and Walker v. Maitland, 5 Barn. & Ald. 171."

We find no case which overrules or calls in question the doctrine of the foregoing authorities. Guided thereby, we reach the conclusion that by the maritime laws and customs of England the loss in the case at bar was proximately caused by the overturning of the vessel under the impulse of tidal and river currents, although the accident would not have occurred, but for the negligent loading of cargo taken on board at Tacoma; that the overturning of the vessel was a peril of the sea, within the provisions of the insurance contract; and that the action of the sea was the immediate cause of the accident. In Smith v. Scott, 4 Taunt. 125, Lord Mansfield said: "I do not know how to make this out not to be a peril of the sea. What drove the Margaret against the Helena? The sea. What was the cause that the crew of the Margaret did not prevent her from running against the other? Their gross and culpable negligence; but still, the sea did the mischief."

The judgment is reversed, and the cause is remanded for a new trial.