240 F.2d 460
 NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Libelant-Appellant,
v.
William Stanger GRAY, one of the Lloyd's underwriters, and
Orion Insurance Company, Ltd., Insurance Company
Member of the Institute of London
Underwriters, Respondent-Appellees.
 No. 86, Docket 24187.
 United States Court of Appeals Second Circuit.
 Argued Dec. 7, 1956.
Decided Jan. 16, 1957.
 
 Kirlin, Campbell & Keating, New York City, Edward L. Smith, New York City, for libelant-appellant.
 Dow & Symmers, New York City, for respondent-appellees, Daniel L. Stone-bridge and Raymond W. Mitchell, New York City, of counsel.
 Before CLARK, Chief Judge, and FRANK and LUMBARD, Circuit Judges.
 FRANK, Circuit Judge.
 
 
 1
 The trial judge denied recovery because he held that the loss incurred was not caused by any 'peril of the seas.' As his findings show, the loss occurred as follows: The 'sea' (i.e., water from the river) leaked into the carfloat; this caused the vessel to list and settle; this, in turn, caused some of the railroad's cars and their cargo to slide into the river; then the vessel lurched and other cars and their cargo also fell into the river. The judge held that railroad's employees had been guilty of 'gross negligence' which was 'the immediate cause and the only cause of the accident.' The 'gross negligence' consisted of taking a chance that the carfloat could be towed in spite of its known condition.
 
 
 2
 The loss resulted from a 'peril of the seas.' 'It is enough that damage be done by the fortuitous action of the sea. For instance, where cargo was damaged by the incursion of seawater through a hole in a pipe gnawed by rats, the House of Lords held this to be a peril of the seas.'[1] That the sea is calm makes no difference.[2] Negligence, whether or not 'gross,'[3] but for which the accident would not have occurred, will not serve as a defense to such a policy. Only 'wilful misconduct,' measuring up to 'knavery' or 'design,' will suffice; and neither the evidence nor the judge's findings of fact show such conduct. True, the judge, in the last paragraph of his opinion, referred to the gross negligence as if it constituted wilful misconduct. There we think he erred. In Orient Insurance Co. v. Adams, 123 U.S. 67, 8 S.Ct. 68, 31 L.Ed. 63, the master, before his vessel had steam up, negligently gave orders to cast off into the current of a river; as a result, the vessel was carried over a waterfall and sank. In affirming a judgment, on a verdict in favor of the plaintiffs, under a policy insuring them against 'perils of the seas,' the Court said, 123 U.S. at page 73, 8 S.Ct. at page 71: 'But it is insisted that the court should have granted the request of the company, to the effect that it was not liable if the accident and loss were caused by the 'misconduct' of the master. Had that request been granted, in the form asked, the jury might have supposed that the company was relieved from liability if the master was chargeable with what is sometimes described as gross negligence, as distinguished from simple negligence. Hence the court properly said, in effect, that the misconduct of the master, unless affected by fraud of design, would not defeat a recovery on the policy. The principle upon which the court below acted was that expressed by Chief Justice Gibson in American Ins. Co. v. Insley, 7 Pa.St. 223, 230, when he said that 'public policy requires no more than that a man be not suffered to insure against his own knavery, which is not to be protected or encouraged by any means;3A for though the maxim respondeat superior is applicable to the responsibility of a master for the acts of his servants, yet the insured, so long as he acts with fidelity, is answerable neither for his servants nor for himself." See also Dudgeon v. Pembroke, 2 A.C. 284; Trinder, Anderson & Co. v. Thames and Mersey Mar. Ins. Co. (1895), 2 Q.B. 114; Waters v. Merchants' Louisville Ins. Co., 11 Pet. 213, 221-223, 9 L.Ed. 691.
 
 
 3
 In Olympia Canning Co. v. Union Marine Ins. Co., 9 Cir., 10 F.2d 72, 74, the court said: 'In Davidson v. Burnand, L.R. 4 C.P. 117, the policy included perils of the sea. While the vessel was loading in the harbor her draft was increased by the weight of cargo until the discharge pipe was brought below the surface of the water. The cock of that pipe had been negligently left open. Water flowed into the hold causing injury to cargo. Willes, J., could find no distinction between loss from an accident happening through the negligence of the crew of another vessel and loss from accident happening from the negligence of the crew of the vessel on which the loss was occasioned, all such distinction having been swept aside by Dixon v. Sadler, 5 M. & W. 405. Keating, J., was of the same opinion, as was also Brett, J., who, speaking of the manner in which the injury occurred said: 'The water got in, not by the happening of any ordinary occurrence in the ordinary course of the voyage, but by the accidental circumstances of some cock having been left open by the negligence of the crew. This is, in my opinion, sufficient to make the underwriter liable. Cases of like purport are Devaux v. J'Anson, 5 Bing. (N.C.) 515, and Walker v. Maitland, 5 Barn. & Ald. 171.' We find no case which overrules or calls in question the doctrine of the foregoing authorities. Guided thereby, we reach the conclusion that by the maritime laws and customs of England the loss in the case at bar was proximately caused by the overturning of the vessel under the impulse of tidal and river currents, although the accident would not have occurred, but for the negligent loading of cargo taken on board at Tacoma; that the overturning of the vessel was a peril of the sea, within the provisions of the insurance contract; and that the action of the sea was the immediate cause of the accident. In Smith v. Scott, 4 Taunt. 125, Lord Mansfield said: 'I do not know how to make this out not to be a peril of the sea. What drove the Margaret against the Helena? The sea. What was the cause that the crew of the Margaret did not prevent her from running against the other? Their gross and culpable negligence; but still, the sea did the mischief."
 
 
 4
 A determination by a trial judge of the existence of negligence is not a finding of fact but a legal conclusion.[4] So, too, is a determination as to 'wilful misconduct.' Accordingly, the judge's statement as to such conduct is not binding on us. And, as this is not a tort action, the horrendous niceties of the doctrine of so-called 'proximate cause,' employed in negligence suits,[5] apply in a limited manner only to insurance policies.[6]
 
 
 5
 We do not agree with the trial judge that the libelant's gross negligence was the sole cause of the accident. Nor do we agree with his conclusion that the 'loss was inevitable' because of the way the carfloat was loaded and of her condition.[7] The evidence shows a concatenation of fortuitous circumstances (including misunderstanding by the dispatcher of some of the reports made to him about the vessel's listing).
 
 
 6
 Cases cited by appellees are inapposite: Union Ins. Co. v. Smith, 124 U.S. 405, 8 S.Ct. 534, 31 L.Ed. 497, related to a policy which expressly excepted perils 'consequent upon' and 'arising from' or 'caused by incompetency of the master' or 'want of ordinary care and skill in navigating said vessel,' and 'all unseaworthiness.'[8] Diethelm & Co. v. The Flying Trader, D.C.S.D.N.Y., 141 F.Supp. 271, involved no insurance policy; it was a suit against an ocean carrier which defended on the ground that bills of lading excluded damage due to perils of the sea (and which was nevertheless required to pay for damage to cargo injured in a moderate gale). In Chicago S.S. Lines v. U.S. Lloyds, D.C.N.D.Ill., 2 F.2d 767, affirmed, 7 Cir., 12 F.2d 733, the policy contained an express warranty against the master's negligence.[9] Henjes v. Aetna Ins. Co., 2 Cir., 132 F.2d 715, 720, also related to a breach of an express warranty.
 
 
 7
 Western Assur. Co. of Toronto, Canada v. Shaw, 3 Cir., 11 F.2d 495, a case cited by the trial judge, concerned a policy expressly excepting all claims arising 'from the want of ordinary care and skill in loading and stowing the cargo.' Such, or related cases, we need not consider, since appellees close their brief with the statement: 'It has never been maintained by the insurers that the policies in suit contain an express or implied warranty of seaworthiness; neither has it been maintained that they contain an express 'due care' warranty.'
 
 
 8
 Appellees correctly disclaimed defense of an implied warranty of seaworthiness, since these are time policies.[10] However, appellees, referring to the Engligh Marine Insurance Act (1906) as purporting to codify the English 'case law,' cite Section 39(5) of that Act which provides: 'In a time policy there is no implied warranty that the ship shall be seaworthy at any state of the adventure, but where, with the privity of the assured, the ship is sent to sea in an unseaworthy state, the insurer is not liable for any loss attributable to unseaworthiness.' Appellees contend that the emphasized words relieve them of liability here. We think not. We assume, arguendo, (1) that the evidence showed the 'privity of the assured' and (2) that, in each of the numerous trips made by this busy carfloat, it was 'sent to sea' when it left its moorings. Even so, we reject appellees' contention. For, when the loading occurred and when the accident happened, the carfloat had not been 'sent to sea' but was still moored. The rider to the policy expressly provides that the insurance applies while the vessel is thus moored and 'while being loaded.'
 
 
 9
 We reverse with directions to enter a decree in favor of appellant for its stipulated loss, together with interest and costs.
 
 
 
 [1]
 2 Arnold, Marine Insurance (14th ed.) Section 812
 
 
 [2]
 Judge Rifkind in Compania T. Centro-Americana v. Alliance Ass. Co., D.C., 50 F.Supp. 986, 991; Olympia Canning Co. v. Union Marine Ins. Co., 9 Cir., 10 F.2d 72
 
 
 [3]
 For criticism of the differentiation between 'negligence' and 'gross negligence,' see, e.g., Kelly v. Malott, 7 Cir., 135 F. 74, 76; The New World v. King, 16 How. 469, 474, 14 L.Ed. 1019
 3A Cf. P. Samuel & Co. v. Dumas (1924), A.C. 431, 446, 453, where the ship was wilfully scuttled by the direction of the owner.
 
 
 [4]
 Barbarino v. Stanhope S.S. Co., 2 Cir., 151 F.2d 535, 555; Kreste v. United States, 2 Cir., 158 F.2d 575, 577-578; Dale v. Rosenfeld, 2 Cir., 229 F.2d 855, 858
 
 
 [5]
 See discussion of 'proximate cause' in Hentschel v. Baby Bathinette Corp., 2 Cir., 215 F.2d 102, 105 ff. (dissenting opinion)
 
 
 [6]
 See, e.g., Green, Proximate and Remote Cause, in Green, Essays on Tort and Crime (1933) 1 at 15-16
 
 
 [7]
 There is much to be said for the following statement made in its brief by appellant: 'It was also the result of the actions of the sea upon her in that condition, the place and way she was moored, the words chosen by those reporting her trim to the dispatcher, and a thousand other circumstances. As a matter of hindsight, every happening is the inevitable result of its causes, but as a matter of foresight, no one can predict what causes will be operating at any given moment. Therein lies the element of fortuity that must form an element of a recoverable insurance loss. * * * It is against the unpredictable happenstance of loss through whatever set of circumstances * * * that men take out insurance policies. * * * Loss was not inevitable until water started pouring down Carfloat 60's ventilators less than a half hour before the loss occurred. Many unpredictable circumstances brought about the failure to restore the float to an even and level keel by pumping some water into the stern compartments or taking any of the other steps which would have prevented the accident to which the district court decision refers as a failure to take 'remedial action.' An easily rectified maladjustment in trim occurring in the course of loading, failure to set brakes or the existence of controllable leakage * * * did not render the loss non-fortuitous nor bar a recovery from the underwriters therefor in the absence of a warranty of seaworthiness or against negligence. The law of insurance is not like the law of torts to be used as an instrument of coercion upon assureds to improve operating practices. Assureds do not go into the insurance market to buy themselves an overseer.'
 
 
 [8]
 Moreover, the court affirmed a judgment for the plaintiff
 
 
 [9]
 The case related to an alleged abandonment and the correct interpretation of the 'Inchmaree' clause in a hull insurance policy; the loss resulted from a defective condition of the hull created by a repair in drydock, a cause outside the coverage unless within an 'Inchmaree' clause. The question was whether the assured had brought itself within the express condition precedent to coverage under that clause, i.e., the exercise of due diligence to guard against latent defects
 
 
 [10]
 There are statements in the following cases that the rule may be somewhat different in this country, i.e., that, although there may be no implied warranty of seaworthiness in a time policy, yet if the vessel is in port where repairs may be made, the insured cannot recover for any loss subsequently occurring when the vessel is at sea which is caused by the want of diligence in making the repairs; Union Ins. Co. v. Smith, 124 U.S. 405, 8 S.Ct. 534, 31 L.Ed. 497; New York & P.R.S.S. Co. v. Aetna Ins. Co., 2 Cir., 204 F. 255, 258; Henjes v. Aetna Ins. Co., 2 Cir., 132 F.2d 715, 719. However, as pointed out supra, the statement in the Union Ins. Co. case was obiter for the case involved an express warranty against unseaworthiness. That this was obiter is noted in the New York & P.R.S.S. Co. case, 204 F. 255, 258 (and had been noted by Judge Learned Hand in the district court, 192 F. 212, 214-215). The statement of the so-called American rule in 204 F. at page 258 was also obiter, since the court found no want of diligence. So too was the statement in the Henjes case supra, where there was a breach of an express promissory warranty